1  J. NELSON THOMAS (to be admitted *pro hac vice*)
   MICHAEL J. LINGLE (to be admitted *pro hac vice*)
2  JESSICA L. LUKASIEWICZ (to be admitted *pro hac vice*)
   JONATHAN W. FERRIS (to be admitted *pro hac vice*)
3  THOMAS & SOLOMON LLP
   693 East Avenue
4  Rochester, New York 14607
   Telephone: (585) 272-0540
5  Email:        nthomas@theemploymentattorneys.com
                 mlingle@theemploymentattorneys.com
6                jlukasiewicz@theemploymentattorneys.com
                 jferris@theemploymentattorneys.com
7
   JAMES C. STURDEVANT (SBN 94551)
8  THE STURDEVANT LAW FIRM
   A Professional Corporation
9  4040 Civic Center Drive
   Suite 200
10 San Rafael, CA 94903
   Telephone: (415) 477-2410
11 Facsimile: (415) 492-2810
   Email: jsturdevant@sturdevantlaw.com
12

13                      **UNITED STATES DISTRICT COURT**

14                     **NORTHERN DISTRICT OF CALIFORNIA**

15                    **SAN FRANCISCO/OAKLAND DIVISION**

16

| | |
|---|---|
| 17 **KENDRA SULLIVAN and MARIANNA WILLIAMS,** *individually and as representatives of the class,* | **CLASS ACTION COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| 18 | |
| 19                                         ***Plaintiffs,*** | (1)  Violation of 15 U.S.C. § 1681b(b)(2)(A)(i) (Fair Credit Reporting Act); |
| 20  *v.* | |
| 21 **SAFEWAY, INC., ALBERTSONS COMPANIES, INC., ALBERTSON'S LLC, NEW ALBERTSON'S,** | (2)  Violation of California Civil Code § 1786 *et seq.* (Investigative Consumer Reporting Agencies Act); |
| 22 **INC., ALBERTSONS HOLDING, LLC, ALBERTSON'S STORES SUB HOLDINGS LLC, AB** | |
| 23 **ACQUISITION LLC, AB MANAGEMENT SERVICES CORP., AMERICAN FOOD AND DRUG** | (3)  Violation of California Civil Code § 1785 *et seq.* (Consumer Credit Reporting Agencies Act); and |
| 24 **LLC, INK HOLDINGS, LLC, AND CERBERUS CAPITAL MANAGEMENT, L.P.** | |
| 25 | (4)  Violation of California Labor Code § 1198.5 (Failure to Provide Employment Records) |
| 26                                         ***Defendants.*** | |

27

28

Plaintiffs Kendra Sullivan and Marianna Williams, on behalf of themselves and the class set forth below ("Plaintiffs"), by and through their attorneys, Thomas & Solomon LLP, bring this class action complaint against Safeway, Inc., Albertsons Companies, Inc., Albertson's LLC, New Albertson's, Inc., Albertsons Holding, LLC, Albertson's Stores Sub Holdings LLC, AB Acquisition LLC, AB Management Services Corp., American Food and Drug LLC, Ink Holdings, LLC, and Cerberus Capital Management, L.P. (collectively referred to as "Safeway" or "Defendants").

## **INTRODUCTION**

1.      This putative class action is brought pursuant to the Fair Credit Reporting Act ("FCRA") and similar California laws. Defendants routinely violated the FCRA's core protections by procuring or causing to be procured consumer and/or investigative consumer reports, as those terms are defined by the FCRA (herein referred to collectively as "background report(s)" or "consumer report(s)"), on employees and job applicants without making a legally required stand-alone disclosure.

2.      Using the services of a third party, Safeway routinely obtains and relies on the information in the consumer report to evaluate prospective and current employees.

3.      Given the determinative role that consumer reports can play regarding an applicant's employment prospects, employers are required to ensure that all applicants are aware of the employer's intention to procure a background check by obtaining a credit report.

4.      Specifically, the FCRA provides that an employer or prospective employer cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless…a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).

5.      Pursuant to the FCRA, employment applicants have a right to both obtain a copy of their consumer reports and to have errors in their reports corrected. *See* 15 U.S.C. §§ 1681g, 1681i. In order for applicants to exercise those rights, it is essential that consumers are aware that a report is going to be procured by a prospective employer so that, if they choose, they can request a copy of the report to proactively ensure that it does not contain any errors.

**JURISDICTION AND VENUE**

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

7.    Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims because the state law claims are so related to the FCRA claims that they form part of the same case or controversy. Additionally, jurisdiction over Plaintiffs' state law claims is based upon the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A), because, upon information and belief, the amount in controversy exceeds five million dollars ($5,000,000), exclusives of interest and costs, and because the parties are diverse.

8.    Venue is proper in this District because Defendants transact business in this District, Plaintiffs Sullivan and Williams applied for a job in this District, a substantial part of the events or omissions giving rise to the claims took place in this District (and specifically, completing Defendants' employment applications in this District), and Plaintiff Sullivan lived and worked for Defendants in this District.

9.    Additionally, venue is proper in this District because Defendant Safeway, Inc. maintains its corporate headquarters in Pleasanton, California which is in Alameda County, California, located within this District.

**PARTIES**

*Plaintiffs*

10.    Plaintiff Kendra Sullivan is a resident of Pittsburg, California, which is part of Contra Costa County, located within the Northern District of California.

11.    On or about October 2018, Ms. Sullivan applied to work at Safeway through Safeway's standard online application.

12.    Shortly thereafter, Ms. Sullivan began working as a cashier for Safeway.

13.    Ms. Sullivan completed Defendants' job application process within this District.

14.    Ms. Sullivan worked for Safeway in Pleasant Hill, California which is located in Contra Costa County in the Northern District of California.

15.    Plaintiff Mariana Williams is a resident of California.

16.   On or about November 2018, Ms. Williams applied to work at Safeway through its standard online application.

17.   Shortly thereafter, Ms. Williams began working for Safeway as a courtesy clerk.

***Defendants***

18.   Defendant Safeway, Inc. is a Delaware corporation with its headquarters located in Pleasanton, California.

19.   Safeway Inc. is a wholly-owned subsidiary of Albertsons Holdings LLC, which is a wholly-owned subsidiary of AB Acquisition LLC.

20.   Defendant Albertsons Companies, Inc. is a Delaware corporation.

21.   Albertsons Companies, Inc. operates grocery stores in 36 states and the District of Columbia and under banners known as Albertsons, Safeway, Vons, Jewel-Osco, Shaw's, Acme, Tom Thumb, Randalls, United Supermarkets, Pavilions, Star Market, Haggen, and Carrs.

22.   Defendants utilize a common, uniform job application for all of its stores and banners.

23.   Defendants Albertson's Stores Sub Holdings LLC, AB Management Services Corp., Albertson's LLC, American Food and Drug LLC, Ink Holdings, LLC, and Safeway Inc. are all subsidiaries of Albertsons Companies, Inc.

24.   Defendant Albertson's LLC is a Delaware limited liability company.

25.   Defendant New Albertson's, Inc. is a Delaware corporation.

26.   Defendant Albertsons Holding, LLC is a Delaware limited liability corporation.

27.   Defendant Albertson's Stores Sub Holdings LLC is a Delaware limited liability corporation.

28.   Defendant AB Acquisition LLC is a Delaware limited liability corporation that is owned by Albertsons Companies, Inc. and Albertson's Stores Sub Holdings LLC.

29.   Defendant AB Management Services Corp. is a Delaware corporation.

30.   Defendant American Food and Drug LLC is a Delaware limited liability company.

31.   Defendant Ink Holdings, LLC is a Delaware limited liability company.

32.   Defendant Cerberus Capital Management, L.P. is a Delaware limited partnership.

33.     AB Acquisition, LLC is controlled by an investor group led by Cerberus Capital Management, L.P.

34.     Defendants constitute an integrated enterprise employing more than 250,000 employees.

35.     At all times mentioned herein, each named Defendant was the employee, agent or representative of each other Defendant and was acting with the knowledge and consent of each other Defendant and within the purpose and scope of such employment, agency or representation in doing or failing to do the acts alleged in this Complaint. Further, each Defendant has ratified and approved the acts of its agents.

36.     Defendants jointly employed the Plaintiffs.

37.     Defendants oversee the hiring process of all of their locations and request background checks on behalf of potential employees, including Plaintiffs Sullivan and Williams.

## FACTS

***Defendants' Failure To Make A Proper Disclosure In Violation Of The FCRA***

38.     Plaintiffs Sullivan and Williams completed Safeway's standard electronic documents relating to their anticipated employment, including an electronic authorization to conduct a background check.

Safeway's online authorization causes a background check to be procured by a third party company.

39.     Safeway's background check authorization contains liability release language stating:

> …I release all parties and persons, including the Company, from any and all liability for any damages for seeking or providing this information, consistent with local, state, and federal law.

40.     The inclusion of the release provisions in connection with the background disclosure violates the FCRA.

41.     At the bottom of the page, an applicant must agree to the background check authorization.

42.     In completing Safeway's documentation, Plaintiffs Sullivan and Williams chose that they agreed to the background check.

43.     Safeway's online documentation and authorization fails to include a clear and conspicuous disclosure, in a document consisting solely of the disclosure, that Safeway would cause a consumer report to be procured.

44.     By including a release with the disclosure, Defendants willfully disregarded this regulatory guidance and violated 15 U.S.C. § 1681b(b)(2)(A)(i).

45.     As such, Plaintiffs Sullivan and Williams were misled as to the nature and purpose of their consent and their rights.

46.     Despite their failure to provide applicants, including Plaintiffs Sullivan and Williams, with the required stand-alone disclosure, Safeway subsequently procured a consumer report, or caused a consumer report to be procured on Plaintiffs Sullivan, Williams and the Class.

47.     Pursuant to the FCRA, applicants have a right to both obtain a copy of their consumer reports and to have errors in their reports corrected. *See* 15 U.S.C. §§ 1681g, 1681i.  In order for applicants to exercise those rights, it is essential that consumers are aware that a report is going to be procured so that, if they choose, they can request a copy of the report to proactively ensure that it does not contain any errors.

48.     Not aware of their ability to do so, Plaintiffs Sullivan and Williams did not request a copy of the consumer report that was procured by Defendants.

49.     Plaintiffs Sullivan and Williams did not understand and/or were confused by Safeway's online disclosure forms because they were not limited to the information required by the stand-alone disclosure requirement.

50.     Thus, Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report, or causing a consumer report to be procured on Plaintiffs, including Plaintiffs Sullivan and Williams, for employment purposes without first providing a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes.

51.     Plaintiffs suffered a concrete informational injury because Defendants failed to provide Plaintiffs with information to which they were entitled by statute—a stand-alone FCRA disclosure form.

52.     Additionally, as a result of Defendants' violation, Plaintiffs Sullivan and Williams were not only misled by Defendants, but they were subject to a significant invasion of privacy that could jeopardize their personal reputation as well as their financial well-being. By procuring consumer reports containing Plaintiffs' private information without first complying with the FCRA's disclosure requirements, Defendants illegally invaded Plaintiffs' rights to privacy.

***Facts Relating to Defendants' Willful, Systematic and Repeated FCRA Disclosure Violation***

53.     Similar to Plaintiffs Sullivan and Williams, Safeway, through the services of a third party, conducts background checks on other job applicants as part of its standard screening process.

54.     Safeway relies on consumer reporting agencies to obtain this information and report it. These reports constitute "consumer reports" for purposes of the FCRA.

55.     The online documentation completed by applicants does not contain a clear and conspicuous written disclosure to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained by Safeway for employment purposes, but Safeway routinely requests and procures reports from a third party about applicants and employees in spite of this fact.

56.     For example, the documentation includes a liability waiver in the disclosure form.

57.     The language of the FCRA with respect to the stand-alone disclosure requirement is clear. *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

58.     The Federal Trade Commission ("FTC") confirms that "[t]he inclusion of such a [liability] waiver in a disclosure form will violate [the FCRA], which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes." *See* Exhibit A.

59.     Further, courts have routinely confirmed that the failure to include the stand-alone disclosure is a violation of the protection afforded to employees under the FCRA. *See Reardon v. Closetmaid Corp.,* 2:08-CV-01730, 2013 WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013) (in granting summary judgment to the class, court found employer's willful violation of the FCRA based on employer's inclusion of a liability release in a document purporting to constitute the required stand-alone disclosure); *Singleton v. Domino's Pizza, LLC,* CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ("Ultimately, both the statutory text and FTC advisory opinions indicate that an employer

violates the FCRA by including a liability release in a disclosure document").

60.     By systematically inserting a liability release, Safeway willfully violated 15 U.S.C. § 1681b(b)(2)(A).

***Defendants' Failure to Make A Proper Disclosure In Violation Of The ICRAA***

61.     Defendants are "persons" as defined by Section 1786.2(a) of the Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civil Code § 1786.2(a).

62.     Plaintiff and ICRAA Class members are "consumers" within the meaning Section 1786.2(b) of the ICRAA, because they are "individuals."

63.     Section 1786.2(c) of the ICRAA defines "investigative consumer report" as: a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means.

64.     Thus a background checks qualifies as an investigative consumer report under the ICRAA.

65.     Section 1786.16(a)(2) of the ICRAA provides, in relevant part:

If, at any time, an investigative consumer report is sought for employment purposes...the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:

(B)     The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:

(i) An investigative consumer report may be obtained.

(ii) The permissible purpose of the report is identified.

(iii) The disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living.

(iv) Identifies the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation.

(v) Notifies the consumer in writing of the nature and scope of the investigation requested, including the provisions of Section 1786.22.

(vi) Notifies the consumer of the Internet Web site address of the investigative consumer reporting agency identified in clause (iv), or, if the agency has no Internet Web site address, the telephone number of the agency, where the consumer may find information about the investigative reporting agency's privacy practices, including whether the consumer's personal

information will be sent outside the United States or its territories and information that complies with subdivision (d) of Section 1786.20. This clause shall become operative on January 1, 2012.

(C)     The consumer has authorized in writing the procurement of the report.

66.     In evaluating Plaintiffs and other Class members for employment, Defendants procured or caused to be prepared investigative consumer reports (e.g. background checks), as defined by Cal. Civ. Code § 1786.2(c).

67.     Because the purported disclosures are embedded with extraneous information, and are not clear and unambiguous disclosures in stand-alone documents, they do not meet the requirements under the law.

### *Defendants' Failure to Make A Proper Disclosure In Violation Of The CCRAA*

68.     Defendants are "persons" as defined by Section 1785.3(j) of the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civil Code § 1785.3(j).

69.     Plaintiff and CCRAA Class members are "consumers" within the meaning Section 1785.3(b) of the CCRAA, because they are "natural individuals."

70.     Section 1785.3(c) of the ICRAA defines "consumer credit report" as:
any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: . . . (2) employment purposes . . .

Thus, a credit report qualifies as a consumer credit report under the CCRAA.

71.     Section 1785.20.5(a) of the CCRAA provides, in relevant part:
Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used, and **shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report. The notice shall also inform the person of the source of the report . . .**

(Emphasis added.)

72.     In evaluating Plaintiffs and other Class members for employment, Defendants procured

or caused to be prepared consumer credit reports (e.g. credit reports), as defined by Cal. Civ. Code § 1785.3(c).

73. Defendants therefore procured credit reports or caused credit reports to be procured for Plaintiffs and Class members without first providing a written notice in compliance with § 1785.20.5(a) of the CCRAA.

***Defendants Failed to Timely Provide Plaintiffs Sullivan and Williams with Their Employment Records Pursuant to Section 1198.5 of the California Labor Code***

74. On or about May 3, 2019, Plaintiffs Sullivan and Williams requested their employment records from Defendants.

75. Plaintiffs Sullivan and Williams made this request by sending a letter request to Safeway via first class mail.

76. Section 1198.5 of the California Labor Code provides:

> (a) Every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee.

> (b) (1) The employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request.

77. Despite Plaintiffs' requests for their employment records, Defendants have not provided complete records within the time periods required by Section 1198.5(b)(1).

## CLASS ACTION ALLEGATIONS

78. Plaintiffs bring the claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

79. The classes are defined as follows:

A. **FCRA Class**: All of Defendants' current, former, and prospective applicants for employment in the United States who were the subject of a consumer report that was procured or caused to be procured by Safeway within five years of this complaint and through the date of final judgment in this action.

B. **ICRAA Class**: All of Defendants' current, former, and prospective applicants for

employment in California who were the subject of a consumer report that was procured or caused to be procured by Safeway within five years of this complaint and through the date of final judgment in this action.

C.     **CCRAA Class**: All of Defendants' current, former, and prospective applicants for employment in California who were the subject of a consumer report that was procured or caused to be procured by Safeway within seven years of this complaint and through the date of final judgment in this action.

80.     The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

81.     Numerosity is met because each Class size is believed to exceed 40 members.   Safeway regularly has consumer reports procured by a third party in order to evaluate employees and job applicants. Further, Safeway uses the information in the consumer reports to evaluate employees and job applicants. The size and scale of Safeway's operations ensures that the number of members in the class will be in the tens of thousands. The names and addresses of the Class members are available from Defendants' records.

82.     Common issues of law and fact exist as to all members of the Classes. The Plaintiffs and the Class members were all individuals who applied to work for Safeway and a background check was procured by a third party at the request of Safeway. The common issues of law and fact also include the following:

- Whether Defendants obtained or caused to be procured background checks on employees and job applicants;

- Whether Defendants violated the FCRA, ICRAA, and CCRAA by causing consumer reports to be procured without providing the proper disclosure;

- Whether Defendants' violation of the FCRA, ICRAA, and CCRAA was willful;

- The proper measure of statutory and punitive damages; and

- The proper form of declaratory relief.

83.     These common questions of law and fact also predominate over any questions affecting only individual members.

84.     Plaintiffs Sullivan' and Williams's claims are typical of the claims of other members of the Classes because the FCRA, ICRAA, and CCRAA violations suffered by Plaintiffs Sullivan and Williams are typical of that suffered by other Class members, and Defendants treated Plaintiffs Sullivan

and Williams consistent with other Class members in accordance with their standard policies and procedures.

85.    Plaintiffs Sullivan and Williams are able to fairly and adequately represent the interests of the Classes and have no interest antagonistic to the Class.

86.    Class Counsel, Thomas & Solomon LLP and The Sturdevant Law Firm, APC, are qualified and able to litigate the Plaintiffs' and Class members' claims.

87.    Class Counsel concentrates their practices in employment litigation, and their attorneys are experienced in class action litigation.

88.    This class action is also maintainable under subsection (3) of Rule 23(b) because questions of law or fact common to  members of the Classes (*see supra* ¶ 82) predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy

89.    Alternatively, the questions of law and fact common to the class may be certified for class action treatment separately from any questions affecting only individual members under Rule 23(c)(4) because resolution of those common questions will significantly advance the litigation.

## FIRST CAUSE OF ACTION

***Defendants Violated the FCRA by Causing Consumer Reports to be Procured Without First Making a Proper Disclosure***
**15 U.S.C. § 1681b(b)(2)(A)(i)**
**(On behalf of Plaintiffs individually and the FCRA Class)**

90.    Plaintiffs Sullivan and Williams hereby re-allege and incorporate the allegations set forth above.

91.    Defendants have violated the FCRA by procuring or causing consumer reports to be procured on Plaintiffs Sullivan, Williams and other Class members without making the required disclosure. *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

92.    Defendants acted willfully and in deliberate or reckless disregard of their obligations and the rights of Plaintiffs Sullivan, Williams, and other Class members.

93.    Defendants' willful conduct is reflected by the above paragraphs as well as the following:

        a.    Safeway was founded before the FCRA was enacted in 1970 and it hs therefore

had more than 40 years to become compliant;

      b.    Defendants' conduct is inconsistent with the Federal Trade Commission's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute; *see* Exhibit A; *Reardon,* 2013 WL 6231606, *Singleton,* 2012 WL 245965; and

      c.    Despite the plain statutory text and there being a depth of guidance, Defendants adopted a policy of having consumer reports procured on their employees and job applicants without properly disclosing to them that the reports will be procured on them.

94.    Plaintiffs Sullivan, Williams, and Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

95.    Plaintiffs Sullivan, Williams, and Class members are entitled to punitive damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

96.    Plaintiffs Sullivan, Williams, and Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## SECOND CAUSE OF ACTION
### *Defendants Failed to Make Proper Disclosures Under the ICRAA*
### Cal. Civ. Code § 1786 *et seq.*
### (On behalf of Plaintiffs individually and the ICRAA Class)

97.    Plaintiffs Sullivan and Williams hereby re-allege and incorporate the allegations set forth above.

98.    Under the ICRAA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. Cal. Civ. Code § 1786.16(a)(2)(B)-(C). The inclusion of the release and other extraneous information, therefore, violates § 1786.16(a)(2)(B) of the ICRAA.

99.    The plain language of the statute clearly indicates that the inclusion of a liability release in a disclosure form violates the disclosure and authorization requirements of the ICRAA, because such a form would not consist "solely" of the disclosure.

100.     By including the Release and other extraneous information, Defendants willfully violated § 1786.16(a)(2)(B) of the ICRAA. Additionally, the inclusion of the extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and thus violates § 1786.16(a)(2)(B).

101.     Defendants' conduct in violation of § 1786.16(a)(2)(B) of the ICRAA was and is willful and/or grossly negligent. Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiffs and Class members.

102.     As a result of Defendants' illegal procurement of background reports by way of their inadequate disclosures, as set forth above, Plaintiffs and Class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the ICRAA.

103.     Plaintiffs, on behalf of themselves and all Class members, seek all available remedies pursuant to Cal. Civ. Code § 1786.50, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

104.     In the alternative to Plaintiffs' allegation that these violations were willful or grossly negligent, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under Cal. Civ. Code § 1786.50(a), including actual damages and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
***Defendants Failed to Make Proper Disclosures Under the CCRAA***
**Cal. Civ. Code § 1785 *et seq.***
**(On behalf of Plaintiffs individually and the Class)**

105.     Plaintiffs Sullivan and Williams hereby re-allege and incorporate the allegations set forth above.

106.     As described above, Plaintiffs allege that in evaluating themselves and other members of the CCRAA Class for employment, Defendants procured or caused to be prepared consumer credit reports without first providing a written notice in compliance with § 1785.20.5(a) of the CCRAA.

107.     Defendants' conduct in violation of § 1785.20.5(a) of the CCRAA was and is willful and/or grossly negligent. Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiffs and Class members.

108.     As a result of Defendants' illegal procurement of background reports by way of their inadequate disclosures, as set forth above, Plaintiffs and CCRAA Class members have been injured

1  including, but not limited to, having their privacy and statutory rights invaded in violation of the

2  CCRAA.

3      109.    Plaintiffs, on behalf of themselves and all CCRAA Class members, seek all available

4  remedies pursuant to Cal. Civ. Code § 1785.31, including statutory damages and/or actual damages,

5  punitive damages, and attorneys' fees and costs.

6      110.    In the alternative to Plaintiffs' allegation that these violations were willful or grossly

7  negligent, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any,

8  under Cal. Civ. Code § 1785.31(a)(1), including actual damages and attorneys' fees and costs.

9  **FOURTH CAUSE OF ACTION**
10 *Failure to Provide Employment Records Upon Request*
**Cal. Lab. Code § 1198.5**
11 **(On behalf of Plaintiffs individually)**

12     111.    Plaintiffs Sullivan and Williams hereby re-allege and incorporate the allegations set forth

13 above.

14     112.    Pursuant to Labor Code Section 1198.5, an employer shall afford current and former

15 employees the right to inspect or copy the records pertaining to that current or former employee, upon

16 reasonable request to the employer.

17     113.    Plaintiffs requested that Defendants permit inspection or copying of their employment

18 records pursuant to Labor Code Section 1198.5.

19     114.    Defendants failed to provide Plaintiffs with their employment records.

20     115.    Pursuant to Labor Code Section 1198.5, Plaintiffs are entitled, and hereby seek to recover

21 from Defendants a seven-hundred-fifty ($750) dollar penalty for each violation, reasonable attorney's

22 fees, and the costs of bringing this cause of action.

23     **WHEREFORE,** Plaintiffs Sullivan and Williams, on behalf of themselves and the Class, pray

24 for relief as follows:

25     (a)    Determining that this action may proceed as a class action under Rule 23 of the Federal
26            Rules of Civil Procedure;

27     (b)    Designating Sullivan and Williams as class representatives;

28     (c)    Awarding class representatives Sullivan and Williams service payments;

(d)  Designating Thomas & Solomon LLP and The Sturdevant Law Firm APC as Plaintiffs' and Class members' counsel;

(e)  Declaring that Defendants violated the FCRA, ICRAA, and CCRAA;

(f)  Issuing proper notice to the classes at Defendants' expense;

(g)  Declaring that Defendants acted willfully in deliberate or reckless disregard of Plaintiffs' rights and Defendants' obligations under the FCRA, ICRAA, and CCRAA;

(h)  Awarding actual, statutory damages and punitive damages as provided by the FCRA, ICRAA, and CCRAA;

(i)  Awarding reasonable attorneys' fees and costs as provided by the FCRA, ICRAA, and CCRAA;

(j)  Awarding Plaintiffs Sullivan and Williams applicable penalties and reasonable attorneys' fees and costs pursuant to California Labor Code § 1198.5; and

(k)  Such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: June 6, 2019

**THOMAS & SOLOMON LLP**

By:     /s/ J. Nelson Thomas
        J. Nelson Thomas, Esq.
        Michael J. Lingle, Esq.
        Jessica L. Lukasiewicz, Esq.
        Jonathan W. Ferris, Esq.


        THE STURDEVANT LAW FIRM
        A Professional Corporation

        By/s/JamesC.Sturdevant
        James C. Sturdevant

        Attorneys for Plaintiffs

# Exhibit A

1/22/2016

Case 4:19-cv-03187-KAW   Document 1   Filed 06/07/19   Page 18 of 20
Case 6:17-cv-00113   Document 1-1   Filed 02/22/17   Page 2 of 4



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Hauxwell (06-12-98)

June 12, 1998

Richard W. Hauxwell, CEO
Accufax Div., Southwest
P.O. Box 35563
Tulsa, OK 74153-0563

Dear Mr. Hauxwell:

## Re: Sections 604 and 606 of the Fair Credit Reporting Act

This is in response to your letter asking for clarification of sections 604 and 606 of the Fair Credit Reporting Act ("FCRA"). You note that your company is a consumer reporting agency and that you are asking these questions on behalf of your clients. Your questions are addressed below in the order in which you presented them.

*1. Is it safe for us to assume, based on your opinion letter to Mr. Richard Steer, that we can combine the disclosure and release form, which includes applicant identifiers, in one form such as the enclosed sample?*

Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission. As noted in the letter you cited (Steer, 10/21/97), it is our position that the disclosure notice and the authorization may be combined. If they are combined, identifying information (such as date of birth, Social Security number, driver's license number, and current and former addresses) may be included in the form. However, the form should not contain any extraneous information.

While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act.(1) Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

*2. Our members would also like further clarification with regard to Section 606 as to when a Summary of Rights should be provided to the applicant. The language of the law is confusing.*

Section 606 of the FCRA mandates that specific procedures be followed when an investi-gative consumer report is requested by an employer or other user who has a permissible purpose to obtain the report. First, Section 606(a)(1)(A) requires any person procuring an investigative consumer report to disclose this fact to the affected consumer not later than three days after the date on which the report was first requested. Second, Section 606(a)(1)(B) requires that the dis-closure include a statement of the consumer's right to obtain additional information and a copy of the summary of consumer rights prescribed by the Commission. Finally, Section 606(b) sets out the information that must be disclosed when the consumer requests a disclosure pursuant to Section 606(a)(1)(B).

The issue that you raise concerns exactly at what point the Commission's summary of rights must be sent. The language of Section 606(a)(1)(B) is not entirely clear in mandating that the disclosure "includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section [the nature and scope of the inves-tigation] and the written summary of the rights of the consumer prepared pursuant to section 609(c)." As you can see, the reference to the summary of rights comes after a reference to sub-part 606(b), but in a general discussion of the content of the sub-part 606(a)(1)(A) notice.

There are two possible interpretations of this ambiguous language: (1) that Congress in-tended for the summary to be sent with the initial Section 606(a)(1)(A) notice (that an investiga-tive consumer report has been or may be procured); or (2) that Congress intended that the sum-mary be provided with the subsequent Section 606(b) disclosure of the "nature and scope" of the investigation. The Commission's "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA,"(2) states that the summary of rights should be provided with the Section 606(a) notice that an investigative consumer report has been or may be obtained. However, because the statutory language may be interpreted to require that the summary be sent with the subsequent Section 606(b) disclosure, it is unlikely that the Commission's staff would recommend any en-forcement action if the notice is sent with the Section 606(b) notice instead of the Section 606(a) notice.

*3. We would like your opinion regarding end-user organizations which procure criminal and other public record information for employment purposes directly from a federal, state, or county record repository. Would the government repository (agency) providing the information directly to the end-user organization ... requesting the information be considered a consumer reporting agency and subject to the same laws as a privately held consumer reporting agency?*

In general, information that is obtained by an employer directly from a federal, state or county record repository is not a "consumer report" because the repository (such as a courthouse or a state law enforcement agency) is not normally a "consumer reporting agency" and is itself not covered by the FCRA. The attached staff letters (Copple, 6/10/98; Goeke, 6/9/98) discuss this issue in more detail. Therefore, an employer who obtains information directly from a public record source is not subject to the FCRA as to that information. However, because of the fact that information in public record sources may be inaccurate or incomplete, we believe that em-ployers who use this type of information should voluntarily disclose to consumers the nature and substance of any public record information that they rely upon in taking any adverse action. If the information is, in fact, inaccurate or incomplete, the consumer may then take steps to correct the problem.

I hope that this information is helpful to you. The views that are expressed above are those of the Commission's staff and not the views of the Commission itself.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

1/22/2016                    FTC Advisory Opinion to Hauxwell (06-12-98) | Federal Trade Commission

1. The FCRA is part of the Consumer Credit Protection Act, 15 U.S.C. § 1601. We note that the Truth In Lending Act, which is Subchapter I of the Consumer Credit Protection Act, does permit consumers to waive certain rights.

2. The Commission's notice may be found at 16 C.F.R. § 601, Appendix C (1997).



ftc.gov